GALEA'I POUMELE, Appellant,

v.

TA'EI MA'AE, Appellee.

High Court of American Samoa
Appellate Division

AP No. 04-77

April 15, 1980

Before, MURPHY, Associate Justice, presiding, SCHWARTZ*, Acting Associate Jusatice, SHRIVER**, Acting Associate Justice, POUATOA, Associate Judge, and ITUMALO, Associate Judge.

PER CURIAM.

This case came before us on appeal from the Land & Titles Division of this court. The original action was brought by Appellee on behalf of the Ma'ae family to register approximately 1.8 acres of land located in the village of Nu'uuli, Island of Tutuila, American Samoa, as the communal property of the Ma'ae family. At the end of trial, judgment was granted to Appellee. Appellant moved for a new trial and the Government of American Samoa (hereinafter referred to as Government) moved to intervene and for relief from a void judgment. The trial court denied these motions and from that action the Government and Galea'i Poumele appeal. We affirm the Judgment of the trial court.

The issues presented before this court are:

1. Did the trial court err in finding that Appellant built his house above the mean high tide line?

2. Was there sufficient evidence to support the trial court's finding that Appellee owned the land of which Appellant has possession?

3. Did the trial court err in denying Appellant's motion to dismiss Appellee's complaint because the provisions of 27 ASC 1202(d) were not complied with?

An appellate court is generally limited to the correction of errors of law, and in the absence of constitutional or statutory provisions to the contrary, questions of fact are to be tried and determined in the court of original jurisdiction, and not in the appellate court exercising strictly the functions of a court of review.

* * *

Having reviewed the record before this court, we find that there is sufficient material evidence in the record for the trial court to find that the land on which Appellant built his new house and umu was dry land, and that the land of which Appellant was in possession is owned by Appellee.

Appellant also claims the provisions of 27 ASC 1202(d) were not met and for that reason Appellee does not have standing to bring this suit. 27 ASC

5

1202(d) reads:

> "(d)  Any person who claims to be the owner of land
> which is not communal property may ask that the
> land be surveyed by a government surveyor, at
> the owner's expense, and the Governor may provide
> for such survey to be made by a government surveyor
> if private surveying services are not available.
> Only the senior matai of a Samoan family has the
> authority to request a survey of communal property
> of that family."

Appellant claims that the senior matai of the Ma'ae family, Malae Malelega, is not the Plaintiff in the lower court action, nor did he order the survey of the subject land. The trial court found "1. This action was brought by the plaintiffs on behalf of the Ma'ae family, including the senior matai, to register the land So'a as the communal property of the Ma'ae family." We find that there was sufficient evidence from which the trial court could have made the finding. Although Ma'ae Malelega, the senior matai of Appellee's family, did not bring this action himself, Appellant does not cite any authority, nor can the court find any authority which prohibits the senior matai from delegating certain specific tasks to members of his family, and we hold that the senior matai may so and in this case did so delegate. Such delegation having been made in this case, we find that the provisions of 27 ASC 1202(d) have been met.

Historically the senior matai has retained considerable control over the administration of lands in his family's possession. This statute (27 ASC 1202(d)) recognizes the value of such centralized control and endeavors to protect the senior matai's authority by allowing a survey to be done only at his request. The purposes of the statute are also served if the senior matai is allowed to delegate expressly such authority to another family member, for ultimate control still remains in the senior matai. In this case, the evidence demonstrates such express authorization. The senior matai was present at trial and testified that the delegation of authority was by his agreement because he felt the delegate, his son Ta'ei, was more able to handle the rigors of trial.

Appellant Government raises four issues surrounding whether or not the land in question was submerged land. The Government contends, and correctly so, that if the land was submerged then the Government should have a claim to that portion of the land. Because of our conclusion that the trial court did not err in finding that the land was not submerged land, the Government's contention need not be addressed.

Having considered the briefs filed in this case, the record on appeal, the transcript of the trial court proceedings, and the argument of counsel, we find that the trial court did not err and its judgment should be and is affirmed.

MURPHY, Associate Justice, dissenting.

Throughout the history of its involvement in American Samoa, the United States Government has recognized the importance of Samoan customs and traditions. Among the foremost of these are the communal land system and the matai system. In support of this contention I refer to the Cession of Tutuila and Aunu'u, April 17, 1900:

> "3.  The chiefs of the towns will be entitled to retain their
> individual control of the separate towns, if that control is
> in accordance with the laws of the United States of America

concerning Tutuila, and if not obstructive to the peace of the people and the advancement of civilization of the people, subject also to the supervision and instruction of the said Government...."

Further support is found in the Samoan Bill of Rights:

Section 3. POLICY PROTECTIVE LEGISLATION:

It shall be the policy of the Government of American Samoa to protect persons of Samoan ancentry against alienation of their lands and the destruction of the Samoan way of life and language, contrary to their best interests. Such legislation as may be necessary may be enacted to protect the lands, customs, culture, and traditional Samoan family organization of persons of Samoan ancestry, and to encourage business enterprises by such persons..." Art. I, Sec. 3, Rev. Const. of Am. Samoa.

The statutes enacted by the Fono and relating to communal land show a basic assumption that the senior matai is the head of the family and should be the one to act as such:

"(a) It is prohibited for any matai of a Samoan family who is, as such, in control of the communal family lands or any part thereof,..."(emphasis added) 27 ASC 204.

"(a) The senior matai in charge of communal lands belonging to his family, ...shall have the power and authority, as limited by this chapter, to agree with any person that any structure now existing or hereinafter erected on such lands shall not be or become a part of the real estate, but shall remain separate and distinct therefrom...," (emphasis added) 27 ASC 402.

In Aumavae, et al. v. Moefaauo, et al., 1 ASR 38 (1902), this court held:

Whilst it is admitted that each member of the family has the right to state his opinion and make suggestions to the head of the family, he has not the power to arrogate to himself the right of appointment; that right alone is vested in the head of the family, who is the representative to vote and act for the family. Id. at 40-41.

Finally, I quote from Sagapolu v. Tanielu, 1 ASR 331 (H.C.T.D. 1922):

"What is a 'matai'? He is a man that is at the head of a family. He is the man that has the family affairs in charge. He is the man that all the members of the family look up to. He is the man they come to for advice. He is the man they come to for every- thing, practically." Id. at 338 .

With all that in mind, the last sentence of 27 ASC 1202(d): "Only the senior matai of a Samoan family has the authority to request a survey of communal property of that family" is seen as but part of a pattern. Throughout the last 80 years, the senior matai has been the person on whom the family relies and has been the person who acts for the family. To permit others to act on his behalf seems inconsistent to me.

The majority holds the purposes of the statute are served if the senior matai is allowed to delegate expressly such authority, for ultimate control still remains in the senior matai. While this may be true, it is

7

inconsistent with another case decided this very term[1] in which we held in the absence of statute, members of the legislature are not permitted to delegate their powers to sit on the Immigration Board of the Government of American Samoa.

Furthermore, there are provisions for the removal of unsatisfactory matais. 1 ASC 801 provides for the removal of a matai for cause and 1 ASC 802 permits removal if the matai is absent from the Territory for more than one year. Of course, a matai may always resign his title voluntarily. With these three remedies available, it seems to me the family is protected against situations as here in which the senior matai of the family allegedly was too feeble to withstand the rigors of a law suit. Perhaps when a matai is in such a condition, rather than permit the delegation of his authority, the Fono prefers that the matai resign his title or that the title be removed involuntarily.

With the history of the matai system in mind, and to be consistent in our rulings, if it were up to me, I would reverse the trial court on the ground that 27 ASC 1202(d) has not been complied with. I firmly believe that absent compelling consistutional requirements, changes in the Samoan communal land system or matai system should come from the legislature and not the judiciary.

---

1. <u>Yamazaki</u> v. <u>Immigration Board of American Samoa</u>, AP No. 014-79.

---

*Honorable Edward J. Schwartz, Chief United States District Court Judge, Southern District of California, sitting by designation of the Secretary of the Department of the Interior.